CPJ:cpj

# United States District Court
STATE AND DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA

V.

FABIAN LOJANO-LOJANO

**CRIMINAL COMPLAINT**
Case Number:
11-mj-200 JJG

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about July 1, 2010, in Hennepin County, in the State and District of Minnesota, defendant(s)

did fraudulently and knowingly export and send from the United States, or attempt to export and send from the United States, any merchandise, article or object contrary to any law or regulation of the United States, to wit: the defendant remitted to United Parcel Service, for shipping to Asuncion, Paraguay, a package containing Defense Articles, namely, AK-47 rifle parts, without first obtaining a valid export license contrary to 22 U.S.C. § 2778(b)(1) and 22 C.F.R. § 123.1,

in violation of Title 18, United States Code, Section(s) 554.

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

Signature of Complainant
Jon Smithberg
U.S. Homeland Security Investigations

Sworn to before me, and subscribed in my presence,

5/19/11 at St. Paul, MN
Date City and State

The Honorable Jeffrey J. Keyes
UNITED STATES MAGISTRATE JUDGE
Name & Title of Judicial Officer

Signature of Judicial Officer

SCANNED
MAY 20 2011
U.S. DISTRICT COURT ST. PAUL

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, JON SMITHBERG, being duly sworn, depose and state as follows:

## I. INTRODUCTION AND SUMMARY OF PROBABLE CAUSE

1. This affidavit is made in support of a criminal complaint against Fabian Lojano-Lojano (Lojano). Probable cause exists to believe that Lojano attempted to unlawfully export from the United States to individuals in Paraguay, AK47 components, in violation of United States export control laws.

2. This affidavit is being submitted for the limited purpose of obtaining a criminal complaint. This affidavit sets forth only those facts and circumstances necessary to establish probable cause for the issuance of the requested criminal complaint. This affidavit does not contain every material fact that I have learned during the course of this investigation, however, no information known to me that would tend to negate probable cause has been withheld from this affidavit. This affidavit is based upon my personal observations, investigation and experience, or by information that has been provided to me by other law enforcement authorities.

## II. AGENT BACKGROUND

3. I am a Special Agent of the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). I have been so employed since May 2006. I have training and experience in the enforcement of the laws of the United States, including the preparation, presentation, and service of criminal complaints, arrests, and search warrants. I am currently assigned to the HSI Counter Proliferation group ("CPI"), in Minneapolis, Minnesota.

4. As a Special Agent with HSI, I am familiar with the federal laws relating to the unlawful export of arms and strategic technology commodities from the United States as specified and

regulated by the Department of State, Directorate of Defense Trade Controls; the Department of Commerce, Bureau of Industry and Security; and the Department of the Treasury, Office of Foreign Asset Controls ("OFAC"). I am also familiar with related laws, the interpretation and application of federal laws and federal court procedures, and have previously assisted in the execution of numerous federal search warrants. I have participated in numerous investigations of violations of United States laws relating to the unlawful export of arms and commodities restricted for export for reasons of national security, foreign policy, anti-terrorism and embargoed destinations. As a Special Agent with HSI, I have received considerable training related to identifying the techniques, methods, and procedures employed by groups, organizations, companies, corporations, and individuals to export goods and commodities in violation of United States export laws. In addition, I have received specific instruction and training in the conduct of criminal investigations associated with export law violations, which included investigations associated with violations of the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, and the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Part 120, et seq., as well as Smuggling, 18 U.S.C. § 554.

## III. STATUTORY BACKGROUND OF VIOLATIONS

5. AECA authorizes the President of the United States, among other things, to control the export of "defense articles." 22 U.S.C. § 2778(a)(1). The Act also gives the President the authority to designate items as "defense articles." Id. As a practical matter, that task is performed by the Department of State, with the concurrence of the Department of Defense, in accordance with regulations promulgated by the DDTC. 22 C.F.R. Parts 120.1(a) and 120.2. The regulations promulgated by the DDTC are known as the ITAR, and include items which are designated as defense articles. All items that are designated as defense articles are identified by category in a

document that is known as the "United States Munitions List."

6. All "defense article exporters" are required to register with the DDTC and obtain a valid export license ("export license") from the DDTC for any defense article -- regardless of its value -- before the article is exported to another country. 22 U.S.C. § 2778(b)(1) and (2); 22 C.F.R. Part 123(a). In practice, several defense articles are often identified on a single export license. Moreover, all defense article brokers are required to register with the DDTC as well. 22 U.S.C. § 2778(b)(1)(A)(ii)(I). Brokering activities include "financing, transportation, freight forwarding, or taking any other action that facilitates the...export" of a defense article. 22 U.S.C. § 2778(b)(1)(A)(ii)(II).

7. It is a crime for anyone willfully to violate any provision of 22 U.S.C. § 2778 or any rule or regulation issued under that section. 22 U.S.C. § 2778(c). Specifically, it is a crime for any defense article exporter willfully to fail to obtain an export license before exporting a defense article to another country. 22 U.S.C. § 2778(c); 22 C.F.R. Part 127.1(a)(1). Pursuant to the ITAR, it is a crime for a person to conspire to export or to cause to be exported any defense article without a license. 22 C.F.R. Part 127.1. It is also a crime for any person to "knowingly or willfully cause, or aid, abet, counsel, demand, induce, procure, or permit the commission of any act prohibited by 22 U.S.C. 2778," or any regulation issued there under. 22 C.F.R. Part 127.1(d). A person convicted under AECA could be sentenced to up to twenty years imprisonment.

8. Moreover, it is a crime knowingly to smuggle goods out of the United States. Smuggling is defined as one who "fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States...." 18 U.S.C. § 554(a). A person convicted under the

smuggling statute could be sentenced to up to ten years imprisonment.

## IV. FACTS ESTABLISHING PROBABLE CAUSE

9. Based on facts that are summarized below, I submit that there is probable cause to believe that Lojano is committing violations of 18 U.S.C. § 554(a), by knowingly smuggling goods out of the United States.

10. On June 23, 2010, agents from Alcohol, Tobacco, Firearms and Explosives (ATF) received information from United Parcel Service (UPS) in Minneapolis, Minnesota that packages remitted to them for shipping and reported to contain t-shirts had been found to contain firearms parts. The shipper of the packages was listed as Fabian Lojano of 2639 Buchanan Street Northeast, Minneapolis, Minnesota and the designated recipients for the packages were Edgar Fretes and Gustavo Fretes. The packages were destined for 7339 NW 54th Street, Miami, Florida. Agents examined the contents of the packages and recognized the items to be rifle parts, likely for AK-47 type rifles. The packages remained with UPS for shipment to Miami, Florida.

11. On July 2, 2010, ATF agents received another report that UPS had received several packages from Lojano containing firearms parts on the evening of July 1, 2010. In this instance, the shipping labels indicated that the shipper was "Juan Vargas" using an address of 3654 Fillmore Street Northeast, Minneapolis, Minnesota. As more fully described in this affidavit, a UPS employee identified the person using the name "Juan Vargas" as Lojano." The packages had been opened by UPS personnel and found to contain what agents recognized to be firearms parts including magazines for rifles, receiver "flats" (parts designed to be made into receivers), and several other firearms parts. A cursory investigation revealed that the destination address, 7339 NW 54th Street, Miami, Florida, is the location of American Fast Cargo, an international freight forwarder.

12. Based on this information, agents in Miami were notified about the pending shipment, and on July 6, 2010, HSI, ATF, along with members of Customs and Border Protection (CBP) responded to American Fast Cargo in Miami, Florida and located the packages being sent by Lojano. Shipping documents described the contents as "spare parts" as did the markings on each package. Additional documents provided by American Fast Cargo indicated that Juan Vargas with address of 3654 Fillmore Street Northeast, Minneapolis, Minnesota, was exporting the packages containing Kalashnikov automatic rifle (AK-47) parts, to three individuals in Asuncion, Paraguay, via DHL Express. ATF investigation discovered the Minneapolis address of Juan Vargas to be fictitious. Based on my training and experience, I believe Lojano used a false name and address to conceal his association with subsequent shipments; and due in part to his previous shipment on June 22, 2010 that caused him to be suspicious after the UPS clerk set aside his boxes after the weight appeared to be inconsistent with the reported contents of "T-shirts" listed on the shipping label.

13. After a cursory inventory of the parts contained in the three shipments it was concluded that six complete AK-47 rifles could be assembled. Officers recognized these items as United States Munitions List items, which require a license before they may be lawfully exported from the United States. The three shipments were consigned to: Gustavo Fretes, Edgar Fretes and Carlos Javier Caceres and were seized by agents. Computer system records checks found links between all three consignees.

14. As mentioned above, in order to export any item on the United States Munitions List, the exporter must register with the United States Department of State and obtain a State Department license ("DSP-5") before the item may be lawfully exported from the United States. Moreover, it is also a violation of United States law for a person to conspire to export or to cause

to be exported any defense article without first obtaining a license.

15. The DDTC has certified that the sampling of AK47 parts seized are U.S. Munitions List items under category I(g)(h) and requires a license for export from the United States. The DDTC has further confirmed that Fabian Lojano, Edgar Fretes and Gustavo Fretes have never obtained a license to export any United States Munitions List commodities.

16. Moreover, by mislabeling the customs declaration forms on the packages as "spare parts," Lojano was attempting to smuggle the AK47 assault rifle parts and accessories out of the United States in violation of the law.

17. A query of Lojano's criminal history revealed that he is a citizen of Ecuador and has been ordered to leave the United States in March 2010 by an Immigration Judge. Immigration and Customs Enforcement records showed that Lojano had reported his residence to be 2639 Buchanan Street Northeast, Minneapolis, Minnesota. In addition, records from Hennepin County further confirmed that Lojano is currently residing at 2639 Buchanan Street Northeast, Minneapolis, Minnesota.

18. On July 13, 2010, agents interviewed Cheryl Lucas, an employee at the UPS store located at 3312 Broadway Street Northeast, Minneapolis, Minnesota, the location where Lojano shipped the packages. Lucas was shown photographs of Lojano, Edgar Fretes and Gustavo Fretes. Lucas recognized Lojano and stated he was the shipper of the packages containing firearms parts. The packages Lojano had dropped off on June 22, 2010 were taped and labeled "T-Shirts and Silverware". Lucas stated she became suspicious because Lojano was utilizing an expensive method of shipment to be only sending T-shirts and silverware. She stated that UPS often ships T-shirts and they are usually shipped by a cheaper ground method instead of by air

that Lojano used. Because of her suspicion, she and her supervisor opened a package on June 23, 2010 and discovered firearms parts.

19. Lucas stated that again on July 1, 2010, Lojano came into the store with multiple packages. The packages were set aside. Lucas stated she was present when the packages were opened and she observed what appeared to be firearms triggers in one of the packages. ATF was notified of the package contents and the packages were subsequently seized in Miami.

20. On July 14, 2010, agents received information from American Fast Cargo that listed a total of forty-six (46) prior shipments that were sent to Paraguay. Beginning in September 2009, twenty-six (26) shipments had been sent to American Fast Cargo and ultimately exported to Edgar Fretes, eighteen (18) shipments had been sent to American Fast Cargo and ultimately exported to Gustavo Fretes and two (2) shipments had been sent to American Fast Cargo and ultimately exported to Carlos Caceres. According to American Fast Cargo documents, Lojano was listed as one of several shippers identified with those shipments.

21. On August 5, 2010, agents obtained trash from 2639 Buchanan Street NE, Minneapolis, Minnesota. Upon examining the trash, agents observed miscellaneous documents which included a UPS shipment receipt from the shipping of a package by next day air on May 25, 2010 from Lojano, 2639 Buchanan Street Northeast, Minneapolis, Minnesota to Edgar Fretes, 7339 NW 54th St., ASU 55401, Miami, Florida. The description was: "Accessory of casina and parts spare Clothes t-shirts and average." The total cost was $139.15. The package weighed approximately 21 pounds. The receipt also stated the following: "Email Notification: Ship."

22. The investigation has revealed that Lojano utilized the email address fabianlojano@yahoo.com to track and obtain shipping and delivery confirmations from UPS

shipments of AK-47 rifle components.

23. On August 24, 2010, agents reviewed publicly available information from the Facebook account of Lojano which included his "Friends" list. This list contained the link for the Facebook page of Edgar Fretes. Account information received from Facebook, Inc identified Lojano's identification number of 1350582110. The account was created in February 4, 2009. The email address associated to the account was fabianlojano@yahoo.com.

24. On November 24, 2010, after receiving information from HSI Buenos Aires Attaché Office that Gustavo Fretes appeared to be affiliated with Delta Protective Services in Paraguay, HSI agents in Minneapolis conducted internet searches for Delta Protective Services. The website: www.deltaprotective.com was found pertaining to Delta Protective Service S.A. in Paraguay. The company claimed to be a new company with international roots and provided private security. Photos included individuals in security uniforms, with weapons and what appeared to be body armor. The company claimed to be a subsidiary in Paraguay of Delta Protective Services Inc. of Minnesota, USA. The company provided security services as well as business intelligence services. In the section "Special Coverage Events" of the website, a photo was discovered of three individuals, one of which appeared to be Gustavo Fretes.

25. On December 21, 2010, agents received UPS shipping documents that provided additional detail of shipments from Lojano beginning in October 2009 through June 2010. Approximately twenty shipments originated from Lojano at 2639 Buchanan St. NE, Minneapolis, Minnesota and were shipped to Gustavo Fretes, Edgar Fretes and Garlos Cazeres to 7339 NW 54th St. ASU 55401, Miami, the location of American Fast Cargo. Lojano received Shipment notification to his E-mail address of fabianlojano@yahoo.com.

26. On March 15, 2011, HSI Miami and CBP responded to American Fast Cargo located at 7339 NW 54 Street Miami, Florida to intercept a possible shipment from Lojano destined to Paraguay. Agents located one package that listed Lojano as the shipper and the consignee as Edgar Fretes of Asuncion, Paraguay. The package listed its contents as "ropa usada/acc". Upon inspection, one 30 rd AK47 magazine was discovered concealed beneath clothing in the box. Officers recognized this magazine as a United States Munitions List item, which requires a license before it may be lawfully exported from the United States and seized the item.

27. As mentioned earlier, mislabeling the customs declaration form on the package as "ropa usada/acc," Lojano was attempting to smuggle the AK47 magazine out of the United States in violation of the law.

28. On March 16, 2011, agents received records pertaining to Lojano's bank account from TCF Bank. Information from TCF Bank reveals that Lojano received approximately seven wire transfers in the amount of $4,930 USD from May 2010 through June 2010 from individuals in Paraguay. The originator of the wire transfers were listed as Edgar Fretes and Gustavo Fretes. Funds totaling $3502.34 were used to make four firearms purchases according to bank records. Purchases were made at Brownells Inc, DB MFG and Arms of America. Internet searches indicate that these companies are firearms dealers.

29. On May 18, 2011, agents from HSI and ATF executed a federal search warrant at the residence of Lojano located at 2639 Buchanan Street Northeast Minneapolis, Minnesota. A search of the residence revealed two boxes that contained M4 and AK47 firearm parts and accessories. Lojano's name was observed on the shipping labels affixed to each box. Also found were a laptop computer, electronic storage devices, records and miscellaneous documents.

## V. CONCLUSION

29. Based upon the foregoing facts, I believe that probable cause exists to charge and arrest Fabian Lojano with knowingly and willfully attempting to export a AK47 components to Paraguay, in violation of 18 U.S.C. § 554(a); 22 U.S.C. § 2778(b)(1); and 22 C.F.R. § 123.1.

JON SMITHBERG
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Subscribed and sworn to before me on May 9, 2011

JEFFREY J. KEYES
UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA